UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN EBRON,
    *Plaintiff*,

v.

LT. RAMOS,
    *Defendant.*

No. 3:21-cv-928 (OAW)

**RULING ON MOTION TO DISMISS**

The plaintiff, Brian Ebron, a sentenced pro se inmate in the custody of the Department of Correction ("DOC"), filed this civil rights complaint under 42 U.S.C. § 1983. Compl., ECF No. 1. After initial review of the amended complaint, *see* ECF No. 23, the court permitted Plaintiff's case for damages to proceed against Defendant on Eighth Amendment claims of excessive force based on his exposure to a chemical agent and placement into in-cell restraints; an Eighth Amendment claim of deliberate indifference to his mental health needs; and a Fourth Amendment claim based on an unreasonable strip search, *see* Order, ECF No. 24.

Defendant has filed a partial motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to state his Fourth Amendment claim, the deliberate indifference claim, and the excessive force claim in connection with his in-cell restraint. Partial Mot. to Dis., ECF No. 27. The court has reviewed the motion and Defendant's accompanying memorandum of law (together, the "Motion"), ECF Nos. 27 and 27-1, Plaintiff's opposition to the motion, ECF No. 30, and Defendant's reply in support of the

1

Motion, ECF No. 33, and is thoroughly advised in the premises. For the reasons discussed herein, the Motion is **GRANTED in part.**

## I. FACTS

The court treats all the facts alleged in the amended complaint as true for purposes of this ruling.

On April 22, 2020, Plaintiff was secured in his cell after a verbal altercation with Correction Officers Biello and Wilson. Am. Compl., ECF No. 23 at ¶ 1. Defendant directed Plaintiff to "come to the trap and cuff up." *Id.* at ¶ 2. Plaintiff requested to speak first with mental health staff. *Id.* at ¶ 3. Defendant stated that Plaintiff could see mental health staff after he got to the Restricted Housing Unit ("RHU"). *Id.* at ¶ 4. After "some back and forth over Plaintiff's request for mental health," Plaintiff agreed to be placed in cuffs but asked that the hand-held camera be turned on first. *Id.* at ¶ 5. Defendant indicated that the camera was on, and Plaintiff approached the cell door. *Id.* at ¶¶ 6-7.

At that time, Defendant sprayed Plaintiff in the face with a chemical agent without warning; when the Plaintiff turned, Defendant continued to spray him on the back of his head and neck. *Id.* at ¶¶ 7-8. After using the chemical agent, Defendant instructed Plaintiff to put on cuffs. *Id.* at ¶ 9.

When Plaintiff reached the cell door, Defendant instructed another officer to "turn the camera on and to sign on." *Id.* at ¶ 10. After putting on the cuffs, Plaintiff was escorted to the RHU. *Id.* at ¶ 11.

When he reached the RHU, Plaintiff informed Defendant that he would comply with

a controlled strip search but that he would not bend over on his knees. *Id.* at ¶ 12. Plaintiff maintains that this method of having an inmate bend over on his knees puts inmates in a sexually-suggestive position, is designed to humiliate the inmate, and is not authorized as a method for a controlled strip search as defined by the administrative directives. *Id.* at ¶¶ 13-14. This method is difficult for Plaintiff because it causes him to have flashbacks to his sexual molestation as a child. *Id.* at ¶ 15. Plaintiff asserts that he had previously requested to speak with mental health staff so that he could convey this issue, but he does not assert that he informed Defendant of his particular aversion to the position at the time of the search. *Id.* at ¶ 16.

Plaintiff claims that the DOC has a policy of placing an inmate into in-cell restraints until the inmate complies with a strip search. *Id.* at ¶¶ 19-20. He asserts that the inmate is not subject to any lesser form of strip search prior to having in-cell restraints affixed. *Id.* at ¶ 19.

Although Plaintiff already had complied with a controlled strip search, Defendant instructed officers to affix in-cell restraints for Plaintiff's failure to comply with the controlled strip search. *Id.* at ¶¶ 17, 21. Plaintiff was removed from in-cell restraints the next day but was not required to comply with any further controlled strip search. *Id.* at ¶ 21. Plaintiff maintains that the controlled strip search conducted on him prior to being placed into in-cell restraints was satisfactory under the DOC directives and that the use of in-cell restraints served no penological interest. *Id.* at ¶ 22. Plaintiff asserts that he had not been accused or suspected of possessing any drugs, paraphernalia, weapons,

or illegal objects or substances, so an intrusive search method that required him to bend over on his knees was not warranted. *Id.* at ¶¶ 23-24.

## II. STANDARD OF REVIEW

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). Although a pro se complaint must be liberally construed to raise the strongest argument it suggests, pro se litigants nonetheless must state a plausible claim for relief. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).[1]

---

[1] The docket reflects that Defendant provided Plaintiff with a "Notice to Self-Represented Litigant Concerning Motion to Dismiss." *See* Notice, ECF No. 27-2; *see also* D. Conn. L. Civ. R. 12.

### III.  DISCUSSION

Defendant moves to dismiss Plaintiff's Eighth Amendment claims of deliberate indifference to his mental health and excessive force based on the use of in-cell restraints, and his Fourth Amendment claim based on an unreasonable search.  *See* Def's. Mem., ECF No. 27-1.  Defendant does not seek dismissal of Plaintiff's Eighth Amendment excessive force claim based on the use of the chemical agent.

**A. Eighth Amendment Excessive Force**

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim.  *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

A de minimis use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)) (internal quotation marks omitted).  However, it is the force used, not the injury sustained, that "ultimately counts."  *Id.*  A malicious use of force constitutes a per se Eighth Amendment violation because "contemporary standards of decency always are violated."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson*, 503 U.S. at 9).  The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component.  *See Wilkins,* 559 U.S. at 37 (noting that the "core judicial

5

inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires the inmate to show that prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1992)).

"When reviewing the use of restraints under the Eighth Amendment, the court must consider the individual circumstances surrounding the use of restraints, including the length of time restraints were imposed and the objective sought to be served." *Alston v. Butkiewicus*, No. 3:09–cv–207(CSH), 2012 WL 6093887, at *11 (D. Conn. Dec. 7, 2012). Because "[m]aintaining order and security in a prison is a legitimate penological objective . . . the use of restraints that are reasonably related to maintaining prison order and security, without more, does not violate the Eighth Amendment." *Shehan v. Erfe*, No. 15-cv-1315 (MPS), 2017 WL 53691, at *9 (D. Conn. Jan. 4, 2017); *see also Caballero v. Lantz*, No. 05-cv-140 (CFD), 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008) ("The use of in-cell restraints in prisons is not prohibited by the

Eighth Amendment and is certainly justified under many circumstances."). Under DOC Administrative Directive 6.5, correctional officers "may immediately use force and/or apply restraints when an inmate's behavior constitutes an immediate threat to self, others, property, order or the safety and security of the facility." A.D. 6.5(4)(d).[2]

Plaintiff claims that requiring an inmate to bend down during a strip search violated the DOC administrative directives, but Directive 6.7 defines a strip search as:

> a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia.[)] This search shall also include a physical search of the clothing and any personal effects.

A.D. 6.7(3)(p).

A "controlled strip search" is defined as one "in which Department personnel maintain physical, hands[-]on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security." A.D. 6.7(3)(f). Directive 6.7 requires strip searches even without reasonable suspicion when an inmate enters administrative segregation. A.D. 6.7(5)(b)(iv)(1). Plaintiff has not alleged how a "bend over" strip search violated the administrative directives. But even if Defendant violated the prison directives, "violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42

---

[2] The court takes judicial notice of the administrative directives on the DOC website, *see* Connecticut State: Department of Correction, "Administrative Directive Chapter 6: Security and Control," available at https://portal.ct.gov/DOC/AD/AD-Chapter-6 (last visited January 3, 2023), as it is permitted to take judicial notice of "relevant matters of public record." *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

7

U.S.C. § 1983." *Fine v. UConn Med.*, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted).

In *Shehan v. Erfe*, the court (*Hon. Michael P. Shea, J.*) explained that an inmate's disagreement with a "bend and spread" strip search did not support his claim of excessive force, in that the Supreme Court of the United States upheld as reasonable that type of search.  2017 WL 53691, at *9 (citing *Bell v. Wolfish*, 441 U.S. 520, 558 n.39 & 560–61 (1979)). The court went on to hold that the policy by which an inmate may be placed into in-cell restraints pending consent to a controlled strip search does not constitute excessive force.   *Shehan*, No. 15-cv-1315 (MPS), 2017 WL 53691, at *9. However, the court also found that the specific facts of that case gave rise to triable issues as to the constitutionality of the use of in-cell restraints in the instance at issue. Specifically, the court found that there was a genuine dispute as to the reason for using in-cell restraints and the duration of the use of in-cell restraints.

This case presents facts similar to those presented in *Shehan*.   Plaintiff alleges that he already had complied with a strip search before his in-cell restraints were affixed, that the in-cell restraints were not removed until the following day, and that he was not thereafter subjected to any further strip search.   Am. Compl., ECF No. 23 at ¶¶ 17, 21. Accepting these facts as true, the court finds that Plaintiff has stated facts sufficient to survive dismissal.   Accordingly, the court will deny the Motion as to this claim.

  **B.**  **Deliberate Indifference to Mental Health**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court of the United States held that "deliberate indifference to serious medical needs of prisoners constitutes the

8

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S.at 173) (internal citation omitted).  The Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–105 (footnote omitted).

Deliberate indifference to serious medical needs occurs when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted).  In order to state a deliberate indifference claim, a plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105).

Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson*, 501 U.S. at 298.  The condition must be "one that may produce death, degeneration, or extreme pain . . . ."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992)).  Moreover,

"the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Plaintiff has alleged that he requested to see mental health staff prior to being placed in restraints, but that Defendant stated that he could see mental health staff after he was placed at the RHU.  Am. Compl., ECF No. 23 at ¶ 4.  Plaintiff claims that the trauma of his sexual abuse as a child is "trigger[ed]" when he is strip searched while he bends over on his knees.  *Id.* at ¶ 15.  Plaintiff has not alleged, however, that he informed Defendant that he was experiencing mental distress that required immediate attention such that waiting to see mental health staff at the RHU would result in serious harm to his mental health.  Instead, he states that after some "back and forth," he agreed to put cuffs on.  *Id.* at ¶ 5.

Plaintiff argues that the mere fact that he requested to speak with a mental health professional should have been sufficient to alert Defendant that he was at risk of injuring his mental health, but the court disagrees.  An inmate may seek medical attention for any number of reasons, or even no reason at all.  The fact that Plaintiff asked to speak to a mental health professional does not show that Defendant was actually aware of a substantial risk to Plaintiff's mental health.  Plaintiff has therefore failed to show the subjective element of his claim, and consequently, the court must grant the Motion with respect to the deliberate indifference claim.

C.     **Fourth Amendment Violation**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV.  "[I]nmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 62 (2d Cir. 2016).  To determine whether an isolated search infringed on an inmate's Fourth Amendment right to bodily privacy and thus was unreasonable, a court must consider four factors: "'(1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it was conducted.'" *Harris v. Miller,* 818 F.3d 49, 58 (2d Cir. 2016) (quoting *Wolfish*, 441 U.S. at 559).  A strip search is unreasonable "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean–Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citations omitted) (concluding that the plaintiff sufficiently alleged that a strip search was unreasonable because he already had been subjected to a strip search and "the verbal and physical abuse that allegedly accompanied the strip search support[ed] a finding that the search was designed to harass and intimidate.").

"[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders,* 566 U.S. 318, 328 (2012).  The Supreme Court has observed that correctional officials possess the professional expertise and experience to undertake "[t]he task of determining whether a policy is reasonably related to legitimate security interests. . . ."  *Id.*  Thus, "'in the absence of substantial evidence in the record to indicate

11

that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.'" *Id.* (quoting *Block v. Rutherford,* 468 U.S. 576, 584–85 (1984)). The Court has approved visual body cavity inspections—requiring that a male inmate bend over and spread his buttocks—on less than probable cause. *See Wolfish*, 441 U.S. at 558 n.39 & 560–61. Similarly, this district has found reasonable and valid the administrative prison policy rule that "an inmate be strip-searched when he or she is placed in either administrative segregation or a restrictive housing unit. . . ." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *10 (D. Conn. Feb. 2, 2018) (quoting *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013)).

The court can discern no appreciable difference between the search Plaintiff describes in his complaint and those which are described in *Wolfish* and *Abrams.* Moreover, though, Plaintiff has not alleged facts suggesting that he was subjected to a strip search conducted in an unreasonable manner or without a legitimate penological reason. The only strip search to which Plaintiff was subjected was one with which he complied. That strip search was performed under the DOC policy applicable to inmates entering RHU. *See* A.D. 6.7(5)(b)(iv)(i). Plaintiff refused to comply with the "bend over" strip search, though, and he states that no such search occurred after he had been released from the in-cell restraints. Because Plaintiff's complaint raises no suggestion of an unreasonable search, the court must grant the Motion with respect to Plaintiff's Fourth Amendment claim.

## IV. CONCLUSION

For the foregoing reasons, it hereby is **ORDERED AND ADJUDGED** as follows:

1. The court **GRANTS in part** Defendants' partial motion to dismiss the complaint [ECF No. 27].

    a. Plaintiff's Eighth Amendment claim based on deliberate indifference to his mental health needs is **DISMISSED**.

    b. Plaintiff's Fourth Amendment claim is **DISMISSED**.

    c. Plaintiff's Eighth Amendment excessive force claims, with respect to both the use of chemical agent and the use of in-cell restraints, may proceed against Defendant in his individual capacity.

2. Having disposed of the Motion, the court hereby sets the following deadlines:

    a. Discovery shall be completed by **March 5, 2023.**

    b. Motions for summary judgment shall be filed by **April 4, 2023.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 5th day of January, 2023.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE